IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**                                                            **CIVIL ACTION**

**BELDEN INVESTMENTS, L.L.C.,**                  **NO.  19-224**
**INTERSTATE EXPLORATION, LLC, and**
**PHARAOH OIL & GAS, INCORPORATED,**

        **Defendants.**

## COMPLAINT

The United States of America, acting at the request of the United States Coast Guard,

files this Complaint and alleges the following:

### NATURE OF THIS ACTION

1.     The United States seeks repayment by defendants Belden Investments, L.L.C.,

d/b/a Amphibious Marine ("Belden"), Interstate Exploration, LLC ("Interstate"), and Pharaoh

Oil & Gas, Incorporated ("Pharaoh"), as jointly and severally liable responsible parties under

Section 1002(a) of the Oil Pollution Act ("OPA"), 33 U.S.C. § 2702(a), of costs paid by the Oil

Spill Liability Trust Fund (the "Fund") for a U.S. Coast Guard-led removal action following a

March 2015 oil spill (the "Incident") from an abandoned oil and gas facility located in the Bayou

Sorrel, Louisiana (the "Facility").   In addition, the United States seeks repayment, pursuant to

its subrogation rights under OPA Sections 1012 and 1015, 33 U.S.C. §§ 2712 and 2715, from

defendant Pharaoh, of removal costs paid by the Fund to American Pollution Control Corp.

("AMPOL"), a Coast Guard-certified Oil Spill Removal Organization ("OSRO"), for its

uncompensated oil-spill removal costs incurred under a contractual agreement with Pharaoh relating to the Incident.

2. The United States seeks a judgment against the defendants, jointly and severally, for $363,093.56, and any other relief that may be appropriate.

3. The United States seeks judgment against defendant Pharaoh for $43,091.30, and all costs incurred by the Fund by reason of this claim, including interest (including prejudgment interest), administrative and adjudicative costs and attorney's fees, and any other relief that may be appropriate.

## JURISDICTION AND VENUE

4. This court has jurisdiction over the subject matter of this action and over the parties pursuant to Section 1017(b) of OPA, 33 U.S.C. § 2717(b), and 28 U.S.C. §§ 1331 and 1345.

5. Authority to bring this action is vested in the United States Department of Justice by 28 U.S.C. §§ 516 and 519.

6. Venue is proper in this District pursuant to Section 1017(b) of OPA, 33 U.S.C. § 2717(b), and 28 U.S.C. § 1391(b), because it is the judicial district in which the defendants are located and in which the discharge and the resulting response actions occurred.

## DEFENDANTS

7. Defendant Belden is a Louisiana limited liability company with its principal places of business in New Iberia, Louisiana.

- 2 -

8.     Defendant Interstate is a Texas limited liability company with its principal place of business in Cisco, Texas.

9.     Defendant Pharaoh is a Texas corporation with its principal place of business in McCamey, Texas.

## STATUTORY AND REGULATORY BACKGROUND

10.    OPA Section 1002(a), 33 U.S.C. § 2702(a), provides that "each responsible party for . . . a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines . . . is liable for the removal costs and damages specified in subsection (b) of this section [33 U.S.C. § 2702(b)] that result from such incident."

11.    OPA Section 1001(7), 33 U.S.C. § 2701(7), defines "discharge" to mean "any emission (other than natural seepage), intentional or unintentional" and to include "spilling, leaking, pumping, pouring, emitting, emptying, or dumping[.]"

12.    OPA Section 1001(9), 33 U.S.C. § 2701(9), defines "facility" to mean "any structure, group of structures, equipment, or device (other than a vessel) which is used for one or more of the following purposes: . . . storing, handling, [or] transferring . . . oil."

13.     OPA Section 1001(14), 33 U.S.C. § 2701(14), defines "incident" to mean "any occurrence or series of occurrences having the same origin, involving one or more . . . facilities . . . resulting in the discharge or substantial threat of discharge of oil[.]"

14.    OPA Section 1001(21), 33 U.S.C. § 2701(21), defines "navigable waters" as "the waters of the United States, including the territorial sea[.]"

15.     OPA Section 1001(23), 33 U.S.C. § 1701(23), defines "oil" to mean "oil of any kind or in any form, including petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil[.]"

16.     OPA Section 1001(27), 33 U.S.C. § 2701(27), defines "person" to mean an "individual, corporation, partnership, [or] association[.]"

17.     OPA Section 1001(30), 33 U.S.C. § 2701(30), defines "remove" and "removal" to mean "containment and removal of oil or a hazardous substance from water and shorelines or the taking of other actions as may be necessary to minimize or mitigate damage to the public health or welfare, including, but not limited to, fish, shellfish, wildlife, and public and private property, shorelines, and beaches[.]"

18.     OPA Section 1001(31), 33 U.S.C. § 2701(31), defines "removal costs" to mean "the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of a discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident[.]"

19.     OPA Section 1001(32)(E), 33 U.S.C. § 2701(32), defines "responsible party" to include, "[i]n the case of a pipeline, any person owning or operating the pipeline."

20.     OPA Section 1002(b), 33 U.S.C. § 2702(b), provides that the "removal costs" referred to in Section 1002(a) of OPA, 33 U.S.C. § 2702(a), include "(A) all removal costs incurred by the United States . . . under subsection (c), (d), (e), or (*l*) of Section 1321 of this title [Section 311 of the Clean Water Act, 33 U.S.C. § 1321]. . .; and (B) any removal costs incurred

by any person for acts taken by the person which are consistent with the National Contingency Plan [40 C.F.R. Part 300 ("NCP")]."

21.    Federal removal actions are funded through the Fund.   The Fund is administered by the Coast Guard's National Pollution Funds Center ("NPFC") and financed in part by recoveries from responsible parties.

22.    Pursuant to OPA Section 1012(a)(4), 33 U.S.C. § 2712(a)(4), the Fund is authorized to reimburse persons, including OSROs, for uncompensated removal costs determined to be consistent with the NCP.

23.    OPA Section 1013, 33 U.S.C. § 2713, authorizes the promulgation of regulations for the presentation, filing, processing, settlement and adjudication of OPA claims against the Fund.   Pursuant to this authority, the Coast Guard has promulgated regulations establishing claims procedures, codified at 33 C.F.R. Part 136.

24.    OPA Section 1012(f), 33 U.S.C. § 2712(f), provides that "[p]ayment of any claim . . . by the Fund under this Act shall be subject to the United States Government acquiring by subrogation all rights of the claimant . . . to recover from the responsible party."

25.    OPA Section 1015(a), 33 U.S.C. § 2715(a), provides further that "[a]ny person, including the Fund, who pays compensation pursuant to this Act to any claimant for removal costs . . . shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law."

26.    OPA Section 1015(c), 33 U.S.C. § 2715(c), provides that the United States, in an action brought under that Section, may seek "any compensation paid by the Fund to any claimant

pursuant to this Act, and all costs incurred by the Fund by reason of the claim, including interest (including prejudgment interest), administrative and adjudicative costs, and attorney's fees."

## GENERAL ALLEGATIONS

### A.    The Incident

27.    The Facility is an abandoned oil and gas exploration and production facility in Iberville Parish, Louisiana.   The Facility is located in the Bayou Sorrel in the Atchafalaya Basin, approximately 20 miles southwest of Baton Rouge.   The Facility consisted of a series of platforms containing, among other things, storage tanks, mechanical facilities, a knockout tank, a production tank, living quarters and numerous pipelines.

28.    At the time of the Incident, defendant Pharaoh was under contract with the State of Louisiana ("State Agreement"), acting pursuant to the Louisiana Oilfield Site Restoration Law, La. R.S. 30:80 *et seq.*, to plug and abandon various wells and to clean up and restore the Facility in accordance with State law and all applicable federal, state and local regulations.

29.    Sometime prior to 2014, in connection with performing under the State Agreement, Pharaoh hired Belden to decommission and dismantle the entire Facility structure. Performing under its agreement with Pharaoh, Belden cut numerous pipelines at the Facility without those pipelines being "pigged," *i.e.*, cleaned with a device forced through a pipeline to push any oil or other contents out to a collection device, and then capped.   On February 14, 2014, while Belden was dismantling parts of the Facility, oil discharged from a corroded pipeline.   The local Coast Guard unit, Marine Safety Unit ("MSU") Baton Rouge, investigated the discharge and discovered that Belden was conducting hot work (*i.e.*, work that involves burning, welding, using fire- or spark-producing tools, or that produces a source of ignition) on areas of the Facility's

infrastructure that contained oil.   MSU Baton Rouge determined that this presented a fire and safety hazard to personnel and the environment and it issued Administrative Order No. 14-003 to Pharaoh on March 7, 2014, requiring that all piping, storage tanks and related equipment be free of oil and certified gas free by an OSRO before further dismantling activities were conducted.

30.     Later in 2014, Pharaoh and Belden had a disagreement and Pharaoh directed Belden to cease work and to leave the Facility.   Belden left the Facility but did not pig or cap all of the pipelines it had cut while working for Pharaoh.   Pharaoh subsequently hired another contractor to continue the dismantling activities at the Facility, but the new contractor did not pig or cap any flow lines.

31.     During the period of Pharaoh's operation of the Facility pursuant to the State Agreement, Interstate drilled and completed a well in the Bayou Sorrel Field known as Atchafalaya Basin Levee District No. 1 ("ABLD-1").   Interstate contacted the State about potentially using one or more of the existing pipelines at the Facility to transport oil from ABLD-1 to a receiving facility in the East Bayou Sorrel Field known as the "Hilcorp Facility."

32.     In February 2015, the State and Interstate entered into an "Agreement with regard to the Use of Certain Flowlines Currently Planned To Be Decommissioned" (the "Testing Agreement") providing that Interstate could test various pipelines at the Facility to find a line that could be used in connection with transporting oil from ABLD-1 to the Hilcorp Facility.   At the same time, the State notified Pharaoh that the State "has no objection to Pharaoh . . . allowing Interstate . . . to pressure test and utilize one or more of the existing flowlines in the Bayou Sorrel Field."

33.     Pursuant to the Testing Agreement, Interstate identified existing pipelines at the Facility for testing.   On March 9, 2015, Interstate entered into an agreement with Belden to test, among other things, a 4-inch pipeline running from the Facility to the Hilcorp Facility (the "Leak Pipeline").   Interstate directed Belden to conduct the testing in two phases, first, to flush the pipeline of any residual oil using a pig, collecting the flushed oil in tanks at the Facility; and, second, to pressure test the pipeline to evaluate its structural integrity.   Belden commenced the flushing and pressure testing work at the Facility on March 12, 2015.   On March 14, 2015, Belden began flushing the Leak Pipeline from the Hilcorp Facility end, expecting the pipeline to discharge to collection tanks at the Facility.   The oil in the Leak Pipeline instead emerged from a separate outlet at the Facility that discharged directly to the Bayou Sorrel.   The Bayou Sorrel is part of, a tributary of, or adjacent to the Atchafalaya River and Atchafalaya River Basin.

34.     On March 15, 2015, at 11:15 a.m., the Coast Guard received a report from the National Response Center ("NRC"), the designated call center for the reporting of releases of hazardous substances, of a flat skiff tied next to a barge in the Bayou Sorrel where someone was conducting burning.   Upon receiving notice of a spill, the NRC contacted the appropriate federal response agencies.   The NRC notified MSU Baton Rouge, the pre-designated federal On-Scene Coordinator ("FOSC") for the Atchafalaya River Basin, *see* 40 C.F.R. § 300.120.

35.     MSU Baton Rouge responded to the spill report and, upon arrival at the Facility, observed approximately 1,000 gallons of crude oil creating a visible sheen and discoloration in the Bayou Sorrel.   MSU Baton Rouge further observed:   heavy amounts of rainbow sheen extending 2 to 3 nautical miles around the Facility; a 20 foot by 30 foot area of shoreline

between two sections of the Facility that had been burned; a heavy accumulation of oil on the water next to the burned area; and two other burned shoreline areas approximately 100 yards from the initial discharge site.   MSU Baton Rouge also observed, at a point approximately one mile from the Facility, a natural collection point with a large amount of crude oil.   Later testing of the oil at the natural collection point identified it as being from the same source as the oil discharged at the Facility.

36.    When MSU Baton Rouge arrived at the Facility on March 15, 2015, neither Pharaoh, Interstate or Belden had been identified as a responsible party ("RP") and none of their personnel was at the Facility.   Therefore, MSU Baton Rouge, as FOSC, commenced efforts to contain and cleanup the oil until an RP could be identified.   On March 16, 2015, the MSU Baton Rouge Federal On-Scene Coordinator Representative ("FOSCR") identified Interstate as an RP. Interstate accepted responsibility only for the discharge around the initial burn site, however, and commenced removal actions only at that location.

37.    On March 16, 2015, the FOSCR identified Pharaoh as an RP and issued a Notice of Federal Interest to Pharaoh.   When Pharaoh denied liability and did not initiate a removal action, the FOSCR issued a Notice of Federal Assumption to Pharaoh on March 18, 2017.   On the same day, the FOSCR arrived onsite to direct the deployment of containment booms and to begin recovery operations.   On March 19, 2015, Belden informed the FOCSR that oil discovered at the burn sites may have discharged from uncapped submerged pipelines due to rising waters in the Bayou Sorrel and that it had pigged and capped only several pipelines east of the Facility, leaving several others un-pigged and un-capped.

38.     The removal action continued until March 21, 2015, when the FOSCR suspended activities until he could assess alternative strategies to remove the oil.   The oil had become extremely weathered and difficult to separate from the debris around the pipelines and in the Bayou Sorrel.   The FOSCR developed a plan for collecting samples of discharged oil found at the Facility, in the Bayou Sorrel and at the burned areas.   The FOSCR took twelve samples on March 23, 2015, and sent them to the Coast Guard Marine Science Laboratory ("MSL") for analysis on March 25, 2015.   Louisiana State University ("LSU") also took samples for analysis.

39.     The FOSCR restarted the removal action on March 27, 2015, including the removal of all oil from the storage tanks on a platform at the Facility and removal of oil from the containment area around the Facility.   On March 30, 2015, LSU and the FOSCR took additional samples.

40.     Pharaoh, while denying responsibility for the discharge, notified the FOSCR that it wanted to take a more active role at the Facility.   On April 1, 2015, the Coast Guard issued Administrative Order 15-001 to Pharaoh requiring it to submit a response plan within two days for FOSCR approval.   Pharaoh hired U.S. Health and Environmental Liability Management, LLC ("U.S. Helm") to prepare a response action plan to address the removal and disposal of any remaining oil or oily waste in the Facility's storage tanks and the removal and disposal of oil or hazardous materials discharged from the Facility.   The FOSCR approved the U.S. Helm response plan and Pharaoh hired AMPOL to manage and implement the plan and to comply with Administrative Order 15-001.

41.      On April 3, 2015, the Coast Guard determined, based on the samples analyzed and reviewed by the MSL and LSU that the Leak Pipeline was the source of all of the oil discharged during the Incident.

42.      On April 23, 2015, the FOSCR arrived at the facility to oversee AMPOL's completion of the removal action required by Administrative Order 15-001.   On May 1, 2015, the FOSCR met with Pharaoh and AMPOL at the Facility and determined that AMPOL's implementation of the approved response plan met the requirements of Administrative Order 15-001 to the satisfaction of the Coast Guard.

## B.      The Coast Guard's Costs and Demands for Payment

43.      On March 24, 2017, the NPFC issued Notices of Potential Liability ("NOPL") to Pharaoh and Interstate.   On May 8, 2017, the NPFC issued an NOPL to Belden.   These NOPLs informed the recipients that they could be liable for the $320,002.26 in removal costs incurred by the Coast Guard in response to the Incident through the dates of the notices.   On October 17, 2017, the NPFC issued billing letters to each of the Defendants indicating the amount due of $320,002.26 as of the date of the bills.   None of the defendants has reimbursed the Fund for the $320,002.26 in removal costs incurred by the Coast Guard.

44.      On April 7, 2015, pursuant to Administrative Order 15-001, Pharaoh contracted with AMPOL to provide response actions in connection with the Incident.   AMPOL incurred costs under the contract totaling $42,769.24 and AMPOL presented its invoices for these costs to Pharaoh in August 2015.   When Pharaoh failed to pay AMPOL's invoices within 90 days, AMPOL submitted its claim to the Fund pursuant to OPA Section 1012(a)(4), 33 U.S.C.

§ 2712(a)(4), and the Fund's claims procedures, 33 C.F.R. Part 136.   The NPFC adjudicated the claim and issued a determination on December 31, 2015, offering $42,340.30 as full and final settlement for AMPOL's claim.   AMPOL accepted the offer on the same day and received payment from the Fund, and assigned, transferred and subrogated all, rights, claims, interests and rights of action to the United States.   The NPFC incurred $751.00 in costs to adjudicate AMPOL's claim, bringing the Fund's total costs with respect to the AMPOL claim through the date of payment to $43,091.30.

45.    On February 10, 2017, the NPFC issued a Notice of Potential Liability for $43,091.30 to Pharaoh for the costs reimbursed to AMPOL and the adjudicative costs.   On July 14, 2017, the NPFC issued a billing letter to Pharaoh for $43,091.30.   Pharaoh has not paid the Fund for the billed costs.

## LEGAL CONTENTIONS SUPPORTING CLAIMS FOR RELIEF

46.    Pharaoh, Interstate and Belden are "persons" within the meaning of Section 1001(27) of OPA, 33 U.S.C. § 2701(27).

47.    The Facility, including the Leak Pipeline, was a "facility" within the meaning of Section 1001(9) of OPA, 33 U.S.C. § 2701(9), at the time of the Incident.

48.    Pharaoh, Interstate and Belden were at the time of the Incident "operators" of the Facility and the Leak Pipeline within the meaning of Section 1001(26)(A)(ii) of OPA, 33 U.S.C. § 2701(26)(A)(ii), and Section 1001(32)(E) of OPA, 33 U.S.C. § 2701(32)(E) , and are "responsible parties" within the meaning of Sections 1002(a) and 1001(32) of OPA, 33 U.S.C. §§2702(a) and 2701(32).

49.     The discharges of oil and oily water from the pipeline into the Bayou Sorrel were "discharges" of "oil" into "navigable waters" and adjoining shorelines as those terms are defined in Section 1001(7) of OPA, 33 U.S.C. § 2701(7) ("discharge"), Section 1001(23) of OPA, 33 U.S.C. § 2701(23) ("oil"), and Section 1001(21) of OPA, 33 U.S.C. § 2701(21) ("navigable waters").

50.     The Coast Guard's investigations, removal actions and remedial planning activities described above were "removal" actions within the meaning of Section 1001(30) of OPA, 33 U.S.C. § 2701(30).

51.     The money paid or incurred by the Fund for the Coast Guard's removal action conducted in response to releases of oil and oily water from the Leak Pipeline into the Bayou Sorrel were "removal costs" within the meaning of Section 1001(31) of OPA, 33 U.S.C. § 2701(31), and Section 1002(b)(1) of OPA, 33 U.S.C. § 2702(b)(1).

52.     The money paid by the Fund to reimburse AMPOL pursuant to OPA Section 1012(a)(4), 33 U.S.C. § 2712(a)(4), were for removal actions taken by AMPOL, which were consistent with the National Contingency Plan, 40 C.F.R. Part 300 *et seq.*   The amount incurred to adjudicate AMPOL's claim are recoverable costs under OPA Section 1015(c), 33 U.S.C. § 2715(c).

53.     As a result of the actions described above and the reimbursement to AMPOL, the Fund has incurred $363,093.56 in unreimbursed removal costs for the Incident.

## FIRST CLAIM FOR RELIEF
### LIABILITY OF DEFENDANTS FOR REMOVAL
### COSTS UNDER SECTION 1002(a) OF OPA, 33 U.S.C. § 2702(a)

54.    As operators of the Facility and the Leak Pipeline from which oil was discharged into navigable waters and adjoining shorelines, Defendants are liable, jointly and severally, to the United States under Section 1002(a) of OPA, 33 U.S.C. § 2702(a), for $363,093.56 in removal costs paid or incurred by the Fund as a result of discharges of oil from the Leak Pipeline into the Bayou Sorrel in connection with the Incident.

## SECOND CLAIM FOR RELIEF
### LIABILITY OF PHARAOH FOR REMOVAL
### COSTS UNDER OPA SECTIONS 1012 AND 1015

55.    In accordance with OPA Sections 1012(f) and 1015, 33 U.S.C. §§ 2712(f) and 2715, and pursuant to the terms of AMPOL's acceptance of payment of its claim under OPA Section 1012(a)(4), 33 U.S.C. § 2712(a)(4), Pharaoh is liable to the United States for $43,091.30 in compensation paid by the Fund to AMPOL pursuant to OPA and in adjudication costs incurred by the Fund, and all costs incurred by the Fund by reason of this claim, including interest (including prejudgment interest), administrative and attorney's fees.

## REQUEST FOR RELIEF

WHEREFORE, The United States respectfully requests that this Court:

(1)    Enter a judgment of joint and several liability against the defendants and in favor of the United States, in the amount of $363,093.56, plus all costs incurred by the Fund by reason of this claim, including interest (including prejudgment interest), administrative costs and attorney's fees; and

(2)      Enter a judgment of liability against defendant Pharaoh in the amount of

$43,091.30, plus all costs incurred by the Fund by reason of this claim, including interest

(including prejudgment interest), administrative costs and attorney's fees; and

(3)      Grant such other relief as may be appropriate.

Dated this 16th day of April, 2019.

Respectfully submitted,

KAREN DWORKIN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C.

/s/Thomas P. Carroll
THOMAS P. CARROLL, DC Bar No. 388593
Assistant Section Chief
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611 Ben Franklin Station
Washington, D.C. 20044
Telephone:   (202) 514-4051
thomas.carroll @usdoj.gov

BRANDON J. FREMIN
UNITED STATES ATTORNEY

/s/ Chase E. Zachary
Chase E. Zachary, LBN 37366
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana   70801
Telephone: (225) 389-0443
Fax: (225) 389-0685
E-mail: chase.zachary@usdoj.gov

- 15 -

OF COUNSEL:
PATRICIA KINGCADE
Attorney Advisor
National Pollution Funds Center, US Coast Guard
2703 Martin Luther King Jr. Avenue SE
Washington, DC 20593

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Chase E. Zachary, Assistant U.S. Attorney, 777 Florida Street, Suite 208, Baton Rouge, Louisiana 70801 (225) 389-0443

## DEFENDANTS

BELDEN INVESTMENTS, L.L.C., INTERSTATE EXPLORATION, LLC, and PHARAOH OIL & GAS, INCORPORATED

County of Residence of First Listed Defendant    Iberia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

See attachment

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1  U.S. Government
Plaintiff
- [ ] 2  U.S. Government
Defendant
- [ ] 3  Federal Question
*(U.S. Government Not a Party)*
- [ ] 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | [X] 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Oil Pollution Act, 33 U.S.C. §§ 2701-2762
Brief description of cause:
Recovery of Oil Spill Removal Costs

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
363,093.56

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ Yes  [X] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
04/16/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ Chase E. Zachary

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## CIVIL COVER SHEET ATTACHMENT – ATTORNEYS FOR DEFENDANTS

***Attorney for Belden Investments, L.L.C.:***

David P. Salley
Salley Hite Mercer & Resor LLC
365 Canal Street
One Canal Place, Suite 1710
New Orleans, LA 70130
Phone:  (504) 566-8800

***Attorney for Interstate Exploration, LLC:***

Harold J. Flanagan
Flanagan Partners LLP
201 St. Charles Ave., Ste. 2405
New Orleans, LA 70170
Phone:  (504) 569-0235

***Attorney for Pharaoh Oil & Gas, Incorporated:***

Michael A. Crawford
Taylor, Porter, Brooks & Phillips L.L.P.
450 Laurel Street, Suite 800
Baton Rouge, LA 70801
Phone:  (225) 387-3221

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

<table>
<tr><td>UNITED STATES OF AMERICA</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td><em>Plaintiff(s)</em></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>BELDEN INVESTMENTS, L.L.C., INTERSTATE EXPLORATION, LLC, and PHARAOH OIL & GAS, INCORPORATED</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td><em>Defendant(s)</em></td><td>)</td></tr>
</table>

Civil Action No.  19-224

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Belden Investments, L.L.C.
c/o Martin L. Belden
106 Bayou Dr.
New Iberia, LA 70563

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   THOMAS P. CARROLL
Assistant Section Chief
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  19-224

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. **19-224** |
| | ) |
| BELDEN INVESTMENTS, L.L.C., INTERSTATE | ) |
| EXPLORATION, LLC, and PHARAOH OIL & GAS, | ) |
| INCORPORATED | ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Interstate Exploration LLC
17010 Interstate 20, Cisco, TX 76437

c/o Corporation Service Company
Registered Agent for Service of Process
501 Louisiana Avenue
Baton Rouge, LA 70802

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    THOMAS P. CARROLL
Assistant Section Chief
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  19-224

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> _____ <br> *Plaintiff(s)* <br> v. <br> BELDEN INVESTMENTS, L.L.C., INTERSTATE EXPLORATION, LLC, and PHARAOH OIL & GAS, INCORPORATED <br> _____ <br> *Defendant(s)* | Civil Action No.  19-224 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Pharaoh Oil & Gas, Incorporated
c/o Gary O. Bolen
112 W. 6th St.
McCamey, TX 79752

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    THOMAS P. CARROLL
Assistant Section Chief
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  _____        _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   19-224

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc: